UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBBIE WHITE,                                      Case No. 1:12-cv-344

    Plaintiff,                                      Barrett, J.
                                                  Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robbie White filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error.  For the reasons explained below, this case should be REVERSED and REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On October 30, 2006, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of June 21, 2006 primarily due to pain (Tr. 108). She was 53 years old at the time of the ALJ's decision.  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").

On March 30, 2010, an evidentiary hearing was held in Dayton, Ohio at which Plaintiff appeared, accompanied by her attorney.  (Tr. 33-64).  At the hearing, ALJ

1

James Knapp heard testimony from Plaintiff and from a vocational expert. On April 19, 2010, ALJ Knapp entered his decision denying Plaintiff's DIB application. (Tr. 10-24). The Appeals Council denied her request for review, leaving the ALJ's decision as the Defendant's final determination.

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date, although he somewhat contradictorily noted that some evidence of earnings suggested she "may have engaged in substantial gainful activity." (Tr. 13). He determined that she suffers from the following severe impairments: "lumbar degenerative disc disease; mild to moderate bilateral knee osteoarthritis; mild bilateral hand osteoarthritis; and mild obesity." (*Id.*). In addition to Plaintiff's severe impairments, the ALJ noted several "non-severe" impairments, including restless leg syndrome, hypertension, hip pain, headaches, and depression. The ALJ determined that none of the latter five conditions caused "more than minimal work-related limitations when considered singly or in combination with the claimant's other impairments." (Tr. 15). Central to the Plaintiff's assertions of error, the ALJ also held that despite Plaintiff's prior diagnoses and treatment for fibromyalgia and rheumatoid arthritis, neither of those two conditions was a "medically determinable impairment" that would be considered for purposes of Plaintiff's disability determination. (Tr. 16-17).

Considering Plaintiff's severe and non-severe impairments (but not her alleged fibromyalgia or rheumatoid arthritis), the ALJ concluded that she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 17). Based upon his review of the record, the ALJ

2

determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work, further restricted by her inability to: "(1) lift more than ten pounds frequently or twenty pounds occasionally; (2) crawl, crouch, stoop, kneel, or climb stairs more than occasionally; (3) climb ladders or scaffolds; (4) perform a job requiring greater than frequent handling or fingering or any forceful gripping; or (5) work at unprotected heights or around moving machinery." (*Id.*).

Based on her RFC, the ALJ further determined that Plaintiff could continue to perform her past relevant work as a scale clerk, dispatcher, or receptionist. (Tr. 22). Alternatively, he found that, based upon her age, RFC, limited education, and testimony from the vocational expert, Plaintiff could perform other unskilled jobs, which exist in significant numbers in the national economy. (Tr. 23). Therefore, the ALJ concluded that Plaintiff is not under a disability as defined by the Social Security Regulations and is not entitled to DIB.

On appeal to this Court, Plaintiff maintains that the ALJ erred by: (1) failing to follow proper procedure in weighing medical source evidence and in declining to consider Plaintiff's fibromyalgia and rheumatoid arthritis; (2) substituting his own RFC opinions for those of Plaintiff's treating physicians; and (3) improperly ignoring Plaintiff's pain from fibromyalgia, rheumatoid arthritis, and her treatment history.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are

3

both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Statement of Errors

Plaintiff alleges that the ALJ erred by concluding that she could perform either her past relevant work or alternative work. According to Plaintiff, her limitations prevent her from being able to perform any substantial gainful activity in the national economy. Plaintiff specifically argues that the ALJ erred by failing: (1) to give controlling weight to her treating rheumatologist; (2) to defer to an independent residual functional capacity examination; or (3) to properly evaluate Plaintiff's pain in light of her diagnoses and treatment history. The asserted errors impact both Steps 4 and 5 of the sequential analysis.

**1. Treating Physician Error**

**a. Relevant Standard**

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The treating physician rule requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

The reasoning behind the rule has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such

as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (quoting *Wilson*, 378 F.3d at 547).

### b. Dr. Ware's Opinions

Plaintiff argues that the ALJ erred both by rejecting the diagnoses of fibromyalgia and rheumatoid arthritis made by her treating physician, Dr. Avis Ware, and by rejecting Dr. Ware's opinion that Plaintiff was disabled. The ALJ declined to give controlling weight to any of the opinions of Dr. Ware, finding that her opinions deserved "little weight" based upon the ALJ's view that Dr. Ware's opinions were "unsupported by objective signs and findings." (Tr. 19). The ALJ noted that in January 2007, even Dr. Ware acknowledged disagreement among Plaintiff's treating physicians as to what Plaintiff was "able to do" and the extent to which she was disabled. (Tr. 19). However,

7

Dr. Ware indicated in that same letter that scheduling a functional capacity evaluation might resolve that disagreement.  Considering the lack of such an exam at the time of Dr. Ware's initial disability opinion, the ALJ wrote: "It appears…that Dr. Ware based her opinion primarily on the claimant's self-reports of symptoms and limitations." (*Id.*).  Yet even after Dr. Ware reiterated the same opinion in 2008, based partially upon a subsequent functional capacity evaluation, the ALJ dismissed Dr. Ware's opinion because the ALJ did not consider the functional evaluation itself to be "fully credible." (*Id.*).

      Plaintiff argues that to the extent that the ALJ declined to give Dr. Ware's opinions "controlling" weight, the ALJ failed to evaluate the relevant factors required by the regulatory scheme.  Instead, Plaintiff asserts that the ALJ improperly acted as his own medical expert.  Plaintiff argues that this case must be remanded both because of the ALJ's failure to adhere to the regulatory framework, and because of the ALJ's failure to set forth "good reasons" for disregarding Dr. Ware's opinions.  The Court agrees.

      The ALJ's opinion lists the relevant factors (*see* Tr, 18-19) without any clear analysis.  Instead, the ALJ rejects Dr. Ware's diagnosis of fibromyalgia primarily based upon the lack of "objective signs and findings."  In so doing, the ALJ fails to acknowledge that Dr. Ware is a Board certified rheumatologist with Cincinnati Arthritis Associates – a specialist in both rheumatoid arthritis and connective tissue diseases like fibromyalgia - who has treated Plaintiff for more than a decade for her fibromyalgia.  Dr. Ware first suspected and diagnosed fibromyalgia in June of 2001. (*See* Tr. 287).  On several visits in 2001, Dr. Ware documented "classic tender points with "a lot of trigger points in the rhomboid region bilaterally" upon examination.  (*See* Tr. 305-308).  Dr.

8

Ware's notes reflect similar tender points and muscle spasms on virtually every visit throughout the years that she examined Plaintiff.  For example, in 2003, Dr. Ware noted "classic tender points" on exam.  (Tr. 304).  In December 2004, Dr. Ware noted tenderness and spasm in Plaintiff's cervical paraspinal muscles, as well as multiple areas of reported pain, most of which Dr. Ware attributed to fibromyalgia.  (Tr. 302).  Dr. Ware noted similar "classic" and/or "multiple" trigger points in May, September and December 2005.  (Tr. 298-300).  On June 20, 2006, Dr. Ware similarly noted "classic tender points on exam in multiple locations," although she did not identify the precise locations.  (Tr. 292).

Five years after diagnosing fibromyalgia, Dr. Ware began to suspect that Plaintiff also suffered from rheumatoid arthritis.  On January 20, 2006, Dr. Ware reported: "I am alarmed by the elevated acute phase reactants and the positive rheumatoid arthritis factor and CCP antibody.  I'm concerned Ms. White has not only fibromyalgia but also inflammatory joint disease."  (Tr. 296).  In a March 14, 2006 letter from Dr. Ware to Plaintiff's primary care physician, Dr. Stone, Dr. Ware advised that on three prior visits in December 2005 and January 2006, Plaintiff had tested positive for both rheumatoid factor and a CCP antibody elevation.  (Tr. 294).  On April 27, 2006, Dr. Ware observed that Plaintiff was "markedly tender to palpitation of her left bicep tendon," as well as "in her lumbar paraspinals bilaterally."  (Tr. 293).  On September 19, 2006, she noted "1+ synovitis in the second MCP on the right and 1+ synovitis in the left wrist."  (Tr. 291).  On the same date, Dr. Ware opined that despite some symptoms relating to fibromyalgia, depression, and back pain, Dr. Ware also believed that Plaintiff had "active inflammatory joint disease" and therefore recommended increasing "her disease-

9

modifying therapy." (*Id.*). On January 18, 2007, Dr. Ware again noted Plaintiff's "positive rheumatoid arthritis factor and anti-CCP antibody, the latter being highly specific for rheumatoid arthritis and rarely seen in other disorders." (Tr. 288). In a narrative letter dated April 30, 2007, Dr. Ware reiterated Plaintiff's dual diagnoses of fibromyalgia and rheumatoid arthritis, and reported that Plaintiff's conditions had deteriorated to the point that she was disabled due to her fibromyalgia. (Tr. 287).

Dr. Ware examined Plaintiff in March and again in July of 2008, indicating a need to increase treatment for Plaintiff's rheumatoid arthritis and fibromyalgia. (Tr. 439-440). Dr. Ware's 2008 records again found "multiple classic tender points" on exam. (Tr. 445). In July 2008 Dr. Ware reiterated her opinion that Plaintiff was totally disabled. (Tr. 441). However, on August 26, 2008 following a brief period of more intensive treatment for rheumatoid arthritis, Dr. Ware reported that Plaintiff's exam and x-ray showed no evidence of rheumatoid arthritis. (Tr. 442). Plaintiff reported that the Prednisone prescribed by Dr. Ware had resulted in a decrease in her pain level and corresponding increase in her activity level. (*Id.*). At that point in time, Plaintiff no longer exhibited any synovitis of the upper or lower extremities, erythema, inflammation, and she had no erosive changes suggestive of rheumatoid arthritis. (Tr. 442-443). In February 2009, a follow-up examination again found no fluid, erythema, or warmth of Plaintiff's right knee. Other findings were also negative, including a lack of active synovitis in the upper and lower extremities. (Tr. 524). In July 2009, Dr. Ware again reported no synovitis in any joints, and normal reflexes in Plaintiff's knees and lower extremities, except for an absent left leg reflex. (Tr. 422). On January 2010, Dr. Ware again noted no active synovitis. (Tr. 420). Based upon more recent records, Dr. Ware

10

advised Plaintiff that she had no evidence of rheumatoid arthritis, and recommended follow up in six months solely for her fibromyalgia. (Tr. 520).

Arguably, the ALJ's rejection of Dr. Ware's diagnosis of rheumatoid arthritis could be upheld based upon Dr. Ware's later records and opinion.[1] However, the same cannot be said of the diagnosis of fibromyalgia. Notwithstanding Dr. Ware's diagnosis and long-standing treatment of fibromyalgia, the ALJ rejected that diagnosis as well as Dr. Ware's disability opinions based upon the ALJ's view that other severe impairments – specifically, osteoarthritis in Plaintiff's lumbar spine, knees, and hands - accounted for "*all* of the claimant's reported musculoskeletal pain symptoms." (Tr. 16, emphasis added). The ALJ reasoned that neither the diagnosis of fibromyalgia nor that of rheumatoid arthritis were "supported by objective medical signs or findings." (Tr. 17). The ALJ specifically rejected the diagnosis of fibromyalgia on grounds that:

> [T]his diagnosis requires a finding of 11 positive out of 18 trigger points on successive examinations; these have not been clearly identified in this case. For example, Dr. Ware stated on June 4, 2001, that the claimant had only "several" classic tender points…and "suspect[ed]" fibromyalgia.

(Tr. 16). According to the ALJ, Dr. Ware "began referring to a diagnosis of fibromyalgia without further discussion or testing." (*Id.*). The ALJ acknowledged that, on multiple additional clinical visits, Dr. Ware found "classic" and/or "multiple classic" tender points, but criticized Dr. Ware for failing to specifically identify the locations of the trigger points,

---

[1] It should be noted, however, that the goal of treatment is the remission of rheumatoid arthritis. In 2011, in conjunction with their European counterparts, the American College of Rheumatology published a new definition of remission in rheumatoid arthritis for clinical trials, calling remission "an increasingly attainable goal." *See, e.g.*, http://www.ncbi.nlm.nih.gov/pubmed/21292833. (March 2011 article, accessed on PubMed.gov on 4/20/2013).

11

or prove that she had performed a "*proper* tender point examination." (Tr. 16, emphasis added).

Plaintiff relies heavily on *Rogers v. Commissioner of Soc. Security*, 486 F.3d 234, 243 (6th Cir. 2007), in which the Sixth Circuit remanded to the Commissioner for further review after holding that fibromyalgia "can be" a severe impairment, despite the fact that it cannot be confirmed through objective testing. As in *Rogers*, the facts of this case strongly support remand. Plaintiff's fibromyalgia diagnosis has been documented by both her primary care physician and by a specialist (Dr. Ware). On September 3, 2009, neurosurgeon Carlos Ongkiko also noted Plaintiff's history of rheumatoid arthritis and/or fibromyalgia, dating to 2000. (Tr. 489). Even Dr. Albert, upon whose RFC opinions the ALJ primarily relied, did not question Plaintiff's diagnoses of fibromyalgia and rheumatoid arthritis, imposing fingering and handling limitations based upon those diagnoses (Tr. 280). The diagnosis of fibromyalgia is confirmed by Dr. Ware's documentation of "classic" fibromyalgia tender/trigger points in multiple clinical examination records spanning the course of a decade. Consistent with that diagnosis, Plaintiff has been prescribed many medications for her chronic pain, including narcotics.

In *Rogers*, the Sixth Circuit criticized the ALJ's rejection of the diagnosis despite evidence that the plaintiff had been "continually tested for and...increasingly exhibited the medically-accepted and recognized signs of fibromyalgia," and that the diagnosis had been made by a specialist in fibromyalgia, *see id.* at 244-245. In *Rogers* as in this case, the clinical records of treating physicians documented "classic fibromyalgia distribution," as well as the plaintiff's ongoing complaints of intense pain and stiffness, as well as fatigue. *Id.* at 243. Although the failure to recognize a given impairment as

12

"severe" at Step 2 does not necessarily require reversal so long as an ALJ has evaluated Plaintiff's limitations, in this case the error was not harmless. The ALJ dismissed Plaintiff's fibromyalgia diagnosis based upon relatively mild radiological findings, which showed osteoarthrtitis that the ALJ believed "could" account for Plaintiff's symptoms. Using circular reasoning, the ALJ then dismissed Plaintiff's symptoms, including complaints of more severe pain (which Dr. Ware attributed to fibromyalgia) in part because of the lack of pathology demonstrated by objective imaging studies. (Tr. 20-21).[2]

The ALJ seems to have believed that rejecting the diagnosis of fibromyalgia was supportable based upon Dr. Ware's alleged failure to articulate the precise locations of the "11 of 18" trigger points. In rejecting the diagnosis, the ALJ improperly substituted his opinion for the medical judgment of a specialist who found "classic" fibromyalgia distribution on successive examinations over the course of a decade. The Defendant makes no attempt to distinguish this case from *Rogers*. Neither that case nor any other authority support the ALJ's mistaken belief that more precise mapping of the location of Plaintiff's trigger points by a treating rheumatologist was required, particularly where no contrary medical opinion concerning the diagnosis exists. *Accord Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir., 1988)(noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia).

### 2. Rejection of Functional Limitations

---

[2]Dr. Ware refers to the same imaging studies but arrives at a different conclusion. (*See, e.g.*, Tr. 287, noting that MRI shows localized right disc protrusion at L5-S1, but that "her symptoms are actually on the left").

In addition to the asserted error concerning the diagnosis of fibromyalgia, Plaintiff disputes the ALJ's rejection of the functional limitations found by an occupational therapist during an extensive examination ordered by Plaintiff's primary care physician, Dr. Stone.  The diagnosis of fibromyalgia, like any other diagnosis, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual.  *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990); *McKenzie v. Commissioner of Soc. Security*, 2000 WL 687680 at *5 (6th Cir. May 19, 2000).  For that reason, an error affecting a claimant's RFC is often more critical than any diagnostic error.

Both the determination of a claimant's residual functional capacity (RFC) and the decision on disability are "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). In this case, the ALJ's RFC finding and disability determination were based almost exclusively on the opinion of non-examining consulting physician Nick Albert, M.D., who completed a records review on February 7, 2007.  (Tr. 277-284).  Dr. Albert's opinion was affirmed by reviewing consultant Dr. Hinzman.  (Tr. 255).  Although the ALJ formulated most of his RFC findings from the opinions of Drs. Albert and Hinzman, the ALJ declined to adopt the fingering and handling restrictions offered by those consultants, based upon the ALJ's opinion that Plaintiff does not suffer from the conditions (fibromyalgia and rheumatoid arthritis) on which those limitations were based.  As discussed above, the ALJ committed reversible error in rejecting the diagnosis of fibromyalgia.

Plaintiff also justifiably complains that at the time of his assessment, Dr. Albert could not have reviewed the independent functional capacity evaluation ordered by Dr.

14

Stone, which was completed on July 18, 2007. The therapist who conducted that examination, Jana Edington, O.T.R., opined that Plaintiff's functional abilities fell below the sedentary strength range, and that Plaintiff could perform only part-time employment. (Tr. 217-234). In addition, the ALJ's nearly wholesale adoption of Dr. Albert's RFC opinions fails to acknowledge or discuss the fact that Dr. Albert did not review most of Dr. Ware's later records.

In *Blakley,* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." (*Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *but see Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(Rejecting a medical opinion solely because a consulting physician disagrees is not an adequate basis for rejecting a treating physician's opinion). However, in *Blakley*, the appellate court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consultant's opinions. *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).

Under *Blakley*, then, the ALJ was entitled to credit the opinion of a non-examining consultant like Dr. Albert who has failed to review a complete record, but only if he articulated his reasons for doing so. Absent that explanation, the ALJ's opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or de minimis. In this case, the ALJ accepted Dr. Albert's opinion, even

15

though Dr. Albert did not review either Ms. Edington's opinions or Plaintiff's significant other post-February 2007 medical records. The ALJ failed to acknowledge that Dr. Albert had relied upon an incomplete record. The ALJ's error was not harmless, particularly in light of the ALJ's failure to accept the diagnosis of fibromyalgia.

The ALJ acknowledged that Ms. Edington's opinion was to be considered under SSR 06-03p, which "essentially parallel[s] the criteria set forth above for giving deferential weight to medical opinions," but simultaneously rejected that opinion because as an occupational therapist, Ms. Edington is not an "acceptable medical source." (Tr. 19). The ALJ also rejected the RFC evaluation as lacking "consistency with, or supportability in, the record." (Tr. 19-20). However, Ms. Edington's RFC evaluation is consistent with Dr. Ware's opinions.

The ALJ noted Ms. Edington's comments "on a number of occasions in the report that the claimant could 'do more physically'" than Plaintiff perceived herself to be capable of, and that Plaintiff "did not demonstrate physical signs of discomfort that correlated with the higher level of pain rating…that she gave during the examination." (Tr. 20). Last, the ALJ referenced the finding of "two positive Waddell Signs which are complaints of pain in areas where the body does not experience pain," which the ALJ implied suggested a concern with Plaintiff's effort and/or credibility.[3] (*Id.*).

Although some of the inconsistencies noted by the ALJ might provide grounds for rejecting an RFC assessment, in this case the inconsistencies do not amount to substantial evidence in the record as a whole due to the errors previously noted. For

---

[3] Plaintiff argues that the presence of just two Waddell's signs is clinically insignificant. Plaintiff remains free to present this argument on remand.

16

example, inconsistencies between Ms. Edington's RFC opinions and those of Dr. Albert may have been over-emphasized given that Dr. Albert did not review Ms. Edington's assessment or Plaintiff's more recent records. On remand, therefore, the ALJ will be directed to reconsider the RFC assessment in connection with the record as a whole, including Plaintiff's diagnosis of fibromyalgia.

### 3. Credibility and Assessment of Pain

In evaluating complaints of disabling pain, the fact-finder will first examine "whether there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain." *Walters v. Com'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Pain alone can be disabling, particularly when supported by a severe medical impairment. However, "if disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. §404.1529(c)(3)); *see also* SSR 96-7p.

Here, the ALJ's analysis of Plaintiff's pain level and credibility was flawed by his refusal to accept the diagnosis of fibromyalgia and/or his incomplete assessment of her previously diagnosed rheumatoid arthritis. Therefore, to the extent that the ALJ relied upon the lack of objective medical evidence or diagnosis to discredit Plaintiff's reported pain, his analysis requires remand. The ALJ failed to acknowledge Plaintiff's long-standing history of seeking treatment for her chronic pain, including injections, narcotic pain medications, and muscle relaxers. He included no postural limitations attributable to pain, even though many limitations claimed by Plaintiff (and found by the

17

occupational therapist and Dr. Ware) were pain related, based upon Plaintiff's fibromyalgia.

On the one hand, it is the province of the ALJ, and not this Court, to evaluate the credibility of witnesses. *Rogers v. Com'r of Social Sec.*, 486 F.3d at 247 (citations omitted). When evaluating complaints of chronic pain, credibility is "a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531. On the other hand, the ALJ's credibility determination must still be supported by substantial evidence. *Rogers*, 486 F.3d at 247. As with the ALJ's assessment of Plaintiff's RFC, in this instance the ALJ's evaluation of Plaintiff's pain level and credibility cites to some (but not all) relevant factors. Nevertheless, his analysis of Plaintiff's alleged pain level cannot be upheld on the record presented, because fundamental errors undermine his
 analysis.

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to: (1) carefully reconsider evidence of Plaintiff's fibromyalgia and/or rheumatoid arthritis, and Dr. Ware's opinions as Plaintiff's treating physician; (2) reconsider the functional assessment completed by the occupational therapist, and the weight to be given to Dr. Albert's RFC opinions; and (3) re-evaluate Plaintiff's credibility and allegations of disabling pain.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                                      */s Stephanie K. Bowman*
                                                      Stephanie K. Bowman
                                                      United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBBIE WHITE,                       Case No. 1:12-cv-344

    Plaintiff,                          Barrett, J.
                                      Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).